[Decided January 21, 1887.]

## JAY EMMONS SMITH v. SAMUEL C. WINGARD.

SUPREME COURT — APPEALS — JUDGES — QUALIFICATIONS OF. — Under act of Congress of July 4, 1884 (23 U. S. Stats. at Large, p. 102, sec. 9), providing that no justice of the Supreme Court of Washington Territory " shall act as a member of the Supreme Court in any action or proceeding brought to such court by writ of error, bill of exception, or appeal, from any decision, judgment, or decree, rendered by him as judge of a District Court "; the decision, judgment, or decree which disqualifies a justice on appeal, must be the final one from which the appeal, bill of exceptions, or writ of error, is taken. A justice is not disqualified by having made interlocutory orders or decisions in the action below.

APPEAL from the District Court holding terms at Tacoma. Second District.

Suit in equity brought in the District Court holding terms at Tacoma, for Pierce County. Both parties treated the case as an action at law, and a trial by jury was had in the lower court. The suit was brought prior to July, 1884, in said court, when Pierce County was within the Third Judicial District, and when the Hon. Roger S. Greene was the presiding judge of the District Court held therein. This judge, prior to July, 1884, made some interlocutory orders and decisions in the case, none of which were assigned as errors in the record, or urged as such in appellant's brief filed in the Supreme Court. By act of Congress, approved on July 4, 1884, Pierce County was made a part of the Second Judicial District, presided over by Hon. John P. Hoyt as judge, before whom the case was tried and final judgment rendered, from which appeal was taken. In the Supreme Court at the January term, 1887, a motion was made by the appellant to continue the cause, on the ground that Greene, C. J., and Hoyt, J., were both disqualified to sit, and for that reason there was no quorum in the Supreme Court entitled to hear and determine the cause.

*Mr. John P. Judson,* for the Appellant, and in support of the motion.

*Mr. C. H. Hanford* and *Mr. Elwood Evans,* for the Appellee, *contra.*

Mr. Chief Justice GREENE delivered the opinion of the court.

This is a motion for a continuance on the ground of the alleged disqualification of all but two of the justices to act as members of this court. One of the justices rendered the final judgment from which this appeal is prosecuted, and another of them made an interlocutory order, which is complained of as error.

By the act of Congress of the 4th of July, 1884, re-constructing the Supreme Court of this territory, three justices are necessary to constitute a quorum. If, there-fore, only two of the justices are qualified, there can be no quorum, and there can be no action of the court, whether to grant a continuance or do anything else.

In regard to qualification, the same statute provides that " no justice shall act as a member of the Supreme Court in any action or proceeding brought to such court by writ of error, bill of exceptions, or appeal, from any decision, judgment, or decree rendered by him as judge of the District Court." I consider that provision contains within itself a reference to and must be interpreted as directly connected with and modifying that part of sec-tion 9 of the Organic Act, which is now incorporated in section 1869 of the United States Revised Statutes, and which says that " writs of error, bills of exception, and appeals shall be allowed in all cases from the final decis-ions of the District Court to the Supreme Court," etc.; and that it in effect ordains that no justice shall act in any action or proceeding brought to the Supreme Court under section 9 of the Organic Act, in which he is that judge who rendered the decision, judgment, or decree, from which the appeal, bill of exceptions, or writ of er-ror has been allowed. Such is the exact tenor of the statute, and it is indicative of an intention on the part of Congress to provide for the territory a Supreme Court which shall be measurably and generally free from the embarrassment of any of its members having previously expressed a judicial opinion upon the merits of the very matter brought up for review. Congress does not say that no justice shall act who, in the action or proceeding to be reviewed, has made any ruling claimed to be erro-neous. They choose a different form of expression, the natural and obvious meaning of which is to my mind quite different and distinct.

Here is a case in which Congress is absolute arbiter of

of the situation.   It is about to reconstruct the Supreme
Court of a populous and growing territory.   It seems a
desirability in having the remodeled tribunal so con-
stituted as to be partly or wholly independent of the
mind that passed judicially upon the case in the District
Court.   It determines to place such a restriction upon
the qualifications of the judges as shall favor this inde-
pendence.   But it is unwilling, on the score of economy,
to give the territory more than four justices, and there
is a question as to what ought under the circumstances
to be the extent of the restriction.   Shall it exclude
every judge who has made a ruling on any point sought
to be reviewed?   Or shall it exclude that judge only who
has made the judgment from which the appeal or writ of
error is prosecuted?   There are considerations on the
one side and on the other.   It were good to have an ap-
pellate court no justice of which had ever passed judi-
cially on any question to be reviewed.   But it were also
good to have an appellate court which should be acces-
sible for all suitors in all cases.   Sickness is liable to be-
fall any district judge, or some emergency may call him
out of the territory, so that temporarily his duties have
to be performed by his neighbor judge.   Or a new as-
signment of judges among the districts is liable to be
made by any legislature, when every judge will drop the
cases on his docket unfinished and take up the un-
finished docket of another judge.   But to attempt to
enumerate the considerations or assign the compelling
reasons that determine the action of a circumspect and
omnipercipient Congress were an idle endeavor.   Enough
for us to discern that there were considerations and rea-
sons that might or might not have been operative to
produce the language of the act in question.

It is as if Congress, being about to reconstruct this
court, were approached by some person interested in
that behalf, and asked to give the territory such a court
that a justice of it would never have to pass on a pre-

vious ruling of his own in the same cause, and as if Congress had answered, We cannot give you that, but we can give you an approximation to it, and we will give you the nearest thing to it that we can; we will give you a court which will ordinarily and almost always be such as you desire; we will give you a court, from which that judge whose decision, being the last made, definitely passes upon, affirms, heads up, and concludes all other and previous rulings in the case, shall be excluded; and this is the best we can do, for we are not prepared to give your territory more than four judges, and since our dominant purpose is to supply the most perfect and beneficial facilities possible for reviews of decisions of the District Courts, we must make your Supreme Court one that will harmonize with your Organic Act, and — whatever the changes among the judges — be of general benefit to suitors in all cases.

This line of reasoning is satisfactory to my mind, and would be controlling did the language of the act of Congress call for construction. But it needs no construction. What is the good sense of construing a form of words which has a natural, sensible, literal meaning, plain to see? What authority have I as a judge, what authority has any judge, to say that Congress intended anything but that literal sense? Congress could have meant to say what the words naturally mean. It would have been sensible for them to have meant to say it. Why should anybody presume to say they have not succeeded in saying it, when their words are plain and apt for the purpose? My opinion is, that they have plainly said that no justice can act in the Supreme Court who has rendered the decision, judgment, or decree from which the appeal or writ of error is prosecuted, and thereby, by implication, said that every other justice not otherwise disqualified can and ought to act. I could wish that the duty had not been cast upon me to pass upon this question in a case involving my own qualifica-

tion. But I remember with complacency that up to within a year or two some judge whom this act would disqualify has participated in almost every hearing and decision in this court, without, as I am happy to believe, any very serious detriment to justice, and without any manifest public horror at the impropriety; and I perceive that in the case now before the court the point of the supposed disqualification is of the finest and most microscopic, and as far as I can judge, of the very softest description imaginable.

As a majority of us are of opinion that the justice whose disqualification has been suggested is not disqualified from sitting in this case, the motion is denied.